This is the United States v. Jerome Hines This is Aracel and Mr. Sanders May it please the Court. My name is Louise Aracel. I'm here with Lisa Mack. We're from the Office of the Federal Public Defender. We represent Appellant Jerome Hines. If I may please reserve three minutes for rebuttal. Very well. Thank you. One police officer claimed that in a police report that he saw Mr. Hines holding what appeared to be a gun in plain view. Mr. Hines said in a sworn statement that he didn't hold the gun in plain view. That dispute alone called into question the constitutionality of the arrest. That dispute was about the only constitutionally relevant assertion that appeared in the police report. Is there really a dispute, though, because in your footnote two of your district court brief, you assume that the facts of the police report were true. We included that You start out by saying whatever is in the police report, we don't dispute. That was included in really an abundance of caution. For example, we weren't disputing every single thing in the police report. It was undisputed that we were disputing the relevant aspects of the police report, that what we brought into dispute was disputed. For example, if the officer said he was on I don't quite follow that. First you say it's not disputed. We're not going to contest. We're not going to disagree with footnote two. In other words, we're not going to dispute what's in the police report, but then you say, but we are disputing what's in the police report. I think it was clear, and I think the district court had absolutely no confusion about what we were disputing. You're disputing about it? I think, for example, just to take a silly example, perhaps, if the officer said they were on Orange and Nesbitt, we weren't necessarily disputing that. We were going forward from that. But if, for example, it turns But that's not what you said. I mean, the words have real consequences, right, Ms. Arkell? And it says, the facts of the police documentation are assumed to be true for the purposes of this motion only, period. There's no except for the ones that we think really matter or except for the following list. It's just a flat-out assertion. You can accept the police documentation facts as true, period. Why doesn't that all by itself put us in the zone where the district court evidently was in saying, okay, I'm taking that as true, and now I'm making a legal judgment? For one thing, I don't think that's where the district court was. I think the district court considered the affidavit, but deemed any disputes to go to the jury to be issues for trial. The district court was under no confusion that we were disputing. But the affidavit itself, in its four or five paragraphs, essentially was talking about what was in the police report. Mr. Hines' affidavit said, I didn't hold a gun in plain view. I didn't put a gun into my pocket. But the police report said that the gun was in plain view. And that was the dispute. That was the dispute about the only constitutionally relevant assertion in the police report. Ms. Arkel, I have a more serious problem with your position at the hearing. You have to convince this court that she moved to suppress any evidence in your motion. And I don't find that. I do not find you are saying at that point, at that point, without clarification, the vague and questionable documentation of what happened precludes any effective evaluation. At that point, Mr. Hines will request the weapon allegedly seized be suppressed. So in your motion, you did not move to suppress it. You were actually asking for a sort of a declaratory judgment. And I'm not sure that we can proceed on the basis that this was a motion to suppress. Will you help me out? Sure. Thank you. We were asking for an evidentiary hearing. I think we accepted the reality that unless there was an evidentiary hearing, nothing would be suppressed. That we needed an evidentiary hearing in order to flesh out what happened, to resolve this dispute that we raised through Mr. Hines' affidavit. And then the appropriate action would be to suppress. You do agree. You agree. You did not. The hearing was not based on a motion to suppress anything. I think our intent was sort of a two-step process. No, no, no. Don't give me intent. I'm looking at a record here. And I don't find a motion to suppress anything. I think the – I'm not sure that we ever said a motion to suppress. However, at the hearing, the oral – Well, at the conclusion – at the conclusion, you indicate that if something happens, then you will request a suppression. I think that's the only way we really can proceed, given the burden that we have. Oh, no, no, no, no, no. No, no, no, no. I'll tell you how you proceed, like you do in every other case. You make a motion to suppress.  Often, I wish – You do not, in criminal law, get a – ask the court to give you a declaratory judgment. Judge, I wish it were true that we put forward a motion to suppress and we get a hearing. The problem – this case is the absolute classic example of why we don't get motion – we don't get evidentiary hearings. We have to move – we have to produce so much more than what the government is required to prove in order to get an evidentiary hearing. That has been our experience, and it was borne out in this case. What exactly were you seeking in your motion? We sought – if – Was it a motion for a hearing? A motion for an evidentiary hearing on the constitutionality of the search. And I am positive that defense counsel opened up the oral argument at the motion with we are challenging the constitutionality of the search. So there was no dispute about the eventual relief we sought. But we recognized that as proceedings occur in our district, we had to get an evidentiary hearing. It doesn't sound like it's artfully put, but is that the way that it's done in the district court that you practice in? We have – I mean, as a judge, I would like to know. I'm making a motion to suppress the evidence, and then you can ask for a hearing. So I can look at the motion papers and I can see exactly what you're seeking to suppress. I am not sure, as I look back, whether we ever said motion to suppress. But there is no question that our experience is that our first fight is to get an evidentiary hearing on our seeking to suppress. And what happened here is we are under no illusion that we can – Well, was there any illusion on the part of the government? I mean, was the government challenging your motion to suppress this handgun? They – yes. They certainly were saying there is no grounds to suppress. So they fought it on that ground. And in our experience, there is no way that we could put forward an affidavit and the government put forward an affidavit and that we would ever expect that based on affidavits alone or submissions alone that we would have evidence suppressed. So the argument you're making is that we needed to make a motion to get an evidentiary hearing instead of a motion to suppress because why? Because – What was the – what's the argument as a matter of law that is – you know what, let me back off that and ask a different question. Is your position here today that even if we didn't ask for a motion to suppress in writing, once we got in front of the judge and we were arguing, we had an oral motion to suppress and everybody knew it? Yes. Is that your pitch? Yes, and I'm not – I'm sorry, I'm not prepared to concede or – to agree or deny that we ever said motion to suppress in writing. But there was absolutely no question that that was the relief we were seeking, presuming an evidentiary hearing. Get – get past that for a minute. Okay. And if my colleagues don't mind me taking the step to the sentencing issue here for a minute. Sure. Go ahead. Your – your assertion seems to be, if I understand it right, that it has to be the case that when the sentencing guidelines talk about loitering, that they couldn't be talking about just loitering all by itself. It must be talking about loitering plus some other offense. Otherwise, nothing would be, quote, similar, unquote, to just plain loitering. Have I read you right? I think that's basically right, although certainly it includes – it would include simple loitering as well, assuming there was some statute out there that remained on the books. So if that's your position, I'd like you to speak to the argument that the government makes, which, if I understand it correctly, and it'll certainly straighten me out if I've got it wrong, which is, look, it – the sentencing guidelines do mean plain old loitering. It was put in there because – same reason vagrancy was put in there, precisely so that people wouldn't get criminal history points for convictions that were of questionable constitutionality. And that's why it's in there. That's the very reason. And that the new application of 12A, in effect, recognizes that by coming into being and saying, look, you have to look at all these different things in addition to loitering, to compare it to loitering, plain old loitering. I think the best argument against that is that there is no indication that that's what the Sentencing Commission did. The plain language, first of all, is that it's not just loitering, but loitering and similar offenses by whatever name known. Second argument, the second reason? No, let's stop at that one because that's perfect. If that's really the thing – and that's the Moore case, right? The judge in the Moore case said loitering by any name, it can't be counted. Among others, yes. Right. If that's the assertion, then 12A is a nullity because why would you even go through a list of factors? All you do is say loitering is in the name. We're done. Exactly. And that is why Calderon Espinoza says you don't even get to that because of loitering. The plain language is loitering by whatever name known. You don't even get to similar. It is loitering. I'm missing one point. If the title loitering is in the offense, then it's – It can't be counted. It can't be counted because loitering under the guidelines doesn't count. I think that's the better argument for a number of reasons. Well, it's a better argument for you. But you have to – I need an answer to my question. Doesn't that make 12A a nullity? Why would 12A say here are the things you go through to see whether there's similarity if the analysis were just loitering is in the name, stop? I think you have to start from the other angle, that if you apply the test to loitering offenses, the plain language of the guideline is a nullity. For example, if you – as the government concedes, if you compare punishments, simple loitering, there is no punishment. There's no such offense anymore. But you do compare elements. You still compare elements. You can compare elements in every case, with every prong. The only prong I'd like to talk about in more detail is the likelihood of recidivism because I think that's a critical point. But if you compare every other prong, it's a self-fulfilling prophecy. It's sort of a stacked deck against – Look at general loitering, the vague type of loitering, and look at the loitering that Hines was convicted of. It's standing about with no particular purpose or with the intent. I shouldn't say or. Being or standing, idling about with the intent to purchase drugs. Isn't that very different from the standpoint of elements, from just idling with no purpose? I think not. He did have a purpose. And that's what makes it a valid offense. The other offenses in the C2 list are valid offenses. But when you compare that offense where he had a purpose with the offense of loitering, which the guidelines say you should not count, we have two separate offenses. I think even when the guidelines were promulgated, there were a range of loitering offenses across the country, valid and probably invalid. Drug loitering, for example, has been around in numerous cases. Now, if I said there's loitering for the purpose of prostitution, if I said there's loitering for the purpose of committing a larceny or breaking an entry, all of those would not count according to your analysis. That's correct. Because the word loitering is there. Not just because the word loitering is there, but because there is no indication that the sentencing commission has made a determination that loitering offenses are good predictors of recidivism. They have not distinguished between, for example, pure loitering and drug loitering. Doesn't five convictions speak for itself in terms of recidivism? I think that's an excellent question, because I think even if you look at the government sites of study and what it shows is drug use, for example, in the year prior to the incident offense, is a good predictor of recidivism. There is no research that the government has pointed to or that the sentencing commission has cited that indicates that a sentence for drug loitering is a good predictor of recidivism. That takes me back to 12A. 12A says recidivism is one of five. Five things to look at. So it can't be that that's the be-all and end-all, right? Because they go out of their way and they say, hey, compare the punishments, look at the perceived seriousness of the offense, look at the elements, look at the level of culpability, and only then, when they get to five, do they say, consider recidivism issues. Number one, I think that's only if you get to the test. Number two, I think if you apply that test, it makes the plain language annulity. But number three, when you look at the purpose of the criminal history section, it's – When you say it makes the plain language annulity, are you going back to the argument that if loitering is in the title, you go no further? I think as far as I – any loitering offense that I know of, yes. Now, I suppose there could be other offenses that, you know, some vagrancy of ordinances, for example, contain loitering. I think they also prohibit loitering. They sort of overlap. So that might be a situation where it's not called loitering, but it essentially – and maybe you do need to apply the test there. But I think when it has loitering in the title, for any loitering offense that I can really think of, it would make the plain language annulity. Well, aren't you – wouldn't you agree with me that we're about the business here of trying to figure out what the Sentencing Commission meant, right? So doesn't the fact that they go into some detail in 12a, new application of 12a, to explain what they want you to do when you're trying to figure out whether something is similar to loitering – I mean, isn't it meaningful that they don't say there, ignore all of this if the word loitering is in the title? No, because I think 12a, the range of offenses that courts have to apply the test to is so vast. It makes sense. That test makes perfect sense when you're applying – when you're deciding whether shoplifting, for example, is like insufficient funds. It makes sense when you're comparing public intoxication to possession of marijuana. It doesn't make sense here because it will always win, really, and that conflicts with the plain language of the statute, and because there is no indication that the Sentencing Commission has made a determination on a categorical level that loitering plus offenses are better predictors of recidivism than pure loitering. Okay. We do have to finish. Thank you. Thank you, Ms. Harkin. We'll get you back on rebuttal. Mr. Sanders? Good afternoon. I'm Assistant United States Attorney Stephen G. Sanders on behalf of the government, the appellee in this matter. I'll start where my adversary left off. We disagree with the argument that applying the factors in Application Note 12a is a nullity if loitering in this list, in 4A1.2C2, means basic loitering. And here's why. You can have an offense that's denominated something completely different. It can be called standing around for no reason, and it can have elements that are slightly different than your normal loitering offense or a vagrancy offense that's not called vagrancy but it has some other label, and it has similar elements to what we now know are vagrancy statutes, and those will be the ones that, when you apply the test in Application Note 12a, will not be counted. Those are always excluded offenses. They may not be vagrancy denominated as such, but they are close enough to vagrancy or to loitering that that's what the Commission had in mind. They wanted courts to exclude offenses which aren't good predictors of recidivism. Did they want courts to look and see and apply 12a when loitering is in the title, or did they want courts to say, pfft, loitering's in the title, that's it, game up? Well, here's an interesting thing. When the Commission enacted – well, no, they did. They did. And how do we know that? Because by the time this Application Note was added to the guidelines, two courts had already said, we need to define what the generic offense is first, and they looked to the Model Penal Code and to Black's Law Dictionary, and that wasn't addressed in this Application Note that was created, so we still have this issue where we have to see what's the generic offense first, and then we have to decide whether this statute is the same as that offense or similar to that offense, and that's where 12a kicks in. The generic offense that you're trying to figure out is something defined as a matter of federal law, right? That's correct. And then you look to the particular state law conviction and see what kind of an overlap there is. Is that it? That's correct, among other factors. One, the overlap is the element, the sentencing consequences, both as a range of punishment and actually imposed. Okay. So let me ask you in regard to the Note 12a, when one of the factors is a comparison of punishments imposed for the illicit and non-illicit, what are you comparing it to? In other words, what would you compare Mr. Hines' convictions to? Or do we just disregard that as a factor and go on to another factor? Well, you can either do as we argue in our brief, that there is no loitering offense anymore in New Jersey, but I will say that when there was loitering on the books, it was the same gradation as the instant loitering with intent offense. Well, you can't compare elements of the offense either, I suppose, because loitering in New Jersey is no longer an offense. Well, that presupposes that you have to look to what New Jersey had as a loitering offense in order to do that elements test. You can just compare the New Jersey statute at issue here, 2C33-2.1, to a generic loitering offense as defined in Black's Law Dictionary. That's the generic offense that we're trying to say. That's the way you go about it. You figure out what loitering should mean and then compare it or what Black's Law Dictionary defines as loitering and compare those elements with the elements of Mr. Hines' convictions. I think you have to do that because we have 50 states and we have multiple other jurisdictions within those states that have loitering offenses or have loitering offenses, so it has to have a universal standard definition. How do you answer the defense argument? In fact, it's the argument that is made in Moore and echoed in the Locke case, I think, that if you take that approach, then you will always count the loitering offense because nowadays there's no such thing as simple loitering. It's always loitering plus. It's always going to be loitering plus, and so this is a meaningless exercise because as soon as you look at the things and you compare them, you'll say, hey, look, there's another element. Surprise, you lose. What's the response to that? Well, my response is twofold. Number one, and this is the difference between the Seventh Circus decision in Locke and Moore and the Ninth Circus decision. The ordinance at issue in the Milwaukee ordinance at issue at Locke, I double-checked it. I didn't make this argument in my brief, but when I looked at it again last night, it does not have the specific intent requirement that the New Jersey statute has. It just has an actus reus component that says if you engage in conduct, that manifests a purpose. So the jury doesn't have to find that that was your purpose. In other words, in order to purchase. Now, that wouldn't be counted. Well, it makes the Milwaukee ordinance at Locke much more like the model penal code or Black's Law Dictionary definition than the statute we have here. So that's one observation I wanted to make. But you'd still have an actus reus that was in addition to and different from loitering with no purpose, right? I take their argument to be that this is an exercise in futility for a defendant to try to say, to go through a test where the elements are a big factor because you will always lose that, always lose that. That was the Moore's case basis for attacking Elmore. And I'm just wondering if you've got a good response to that. I mean, what's the answer to the assertion that the sentencing commission couldn't have meant for that to be the analytical approach because they could just as easily have said, you lose. It's a heads you win, we win, tails you lose kind of exercise. But I think implicit in that analysis is the idea that loitering may have meant one thing when the commission enacted this provision in 1987, but because states have come to revise their laws over time in response to constitutional interpretations, that somehow the meaning of that provision has changed. And it can't. I don't think it changes over time. So if the only thing that's changed is the application note, the addition of the application note, we need to apply the application note. And I think it's interesting. I realize that non-precedential decisions are not decisions, as Judge Aldersert said earlier this morning. But the Fifth Circuit, whose test that the commission codified in application note 12A, in the Arroyos-Fernandez case, which I cited in my brief on page 37, they focused in that case very heavily on the specific intent aspect of the statute at issue there. In other words, that the conduct wasn't just a knowing possession of a false identification, but there was an additional element, specific intent to defraud the government, that made it different and categorically more serious than the listed offense, which I think was just false information to a police officer. And they announced that decision, even though the sentences and the penalties for those two offenses were relatively minor and were the same. I'd like to address one more point on this and then move to the suppression point, if your honors will allow. Well, I do have one question, if you don't mind, about this loitering thing, in addition to what we've talked about. I would appreciate your taking the Locke decision head-on. I know you do some of that in your brief. But what's wrong with the Seventh Circuit's reasoning? It's similar to my explanation a moment ago. I think the Seventh Circuit in Locke also assumes that the commission announced its intention by inaction. In other words, the commission put loitering on the list, and it may have meant simple loitering in 1987, but it sat there and watched as the Supreme Court and other courts issued decisions saying simple loitering is unconstitutional or void for vagueness and didn't react to those decisions. And now the commission knows that loitering offenses are valid only if they target people who act with a specific intent to commit a crime or there's an actus reus component that gives fair notice. The flaw in that analysis is it assumes that the commission, you can glean the commission's intent through its inaction, through its lack of a response to Supreme Court decisions, and I don't think that's the way courts construe statutes or construe guidelines provisions. Judge Alicert, do you have a question on the sentencing? Oh, yes. The Locke case kept talking about plain language, and it did not really follow Hardiman at all, did it? The Seventh Circuit in Locke purported to apply their own multifactor test, which purports to be similar to Hardiman, but I — But they anchored everything in Locke on the expression plain language, and is that part of a sentencing test anywhere? Well, you start with the plain language. You have to try to decide whether loitering means loitering, and this was before the enactment of the application note. But you're right. They focused almost — they started with the default, that is that loitering is in the title of that Milwaukee ordinance, and unless something else convinces them otherwise, it's excludable. Yeah. Well, to follow Locke, for this court to follow Locke, we would not be following either Elmore or Hardiman, would we? I agree with that. I mean, Elmore has been — I wouldn't say Elmore is overruled. Elmore is overruled to the extent that when the commission enacted application note 12a, they added other factors, but they codified Elmore's test. Elmore test is codified in Elmore, in Hardiman. Right. It's one of the others. That's correct. One of the five. Maybe you can address the suppression issue. Okay. I just want to make one last comment on this point, and that is about the risk of recidivism. If you look at the New Jersey statute, it is really a statute that interdicts drug possession or possession with intent to use or sell, either when it happens or when it's just about to happen. So the success, even if you ignore my argument that it's a downgrade offense, so the success of law enforcement in interdicting offense that's always counted, narcotics offenses are always counted under the guidelines, I would think that this, not just anecdotally in this case, but in lots of cases a conviction for this offense will mean that someone was caught just before they engaged in a crime, a more serious crime that the commission — How do we treat Elmore now? Elmore just talks about the elements test, basically. But now we have application note 12, which has the elements test plus four other factors. And I think for the reasons set forth in our brief, that all but factor two favor the same result that Elmore reached. I mean, you have to consider other factors than just the elements, but the elements and the seriousness of defense are just as important. All right.  Absolutely. All right. The suppression hearing? Does the government dispute that there was a suppression, a request for a hearing to suppress a handgun in this case? Oh, we don't dispute at all that there was a request for a suppression hearing, but what was filed in the district court was something called a motion to suppress. It was denominated as a motion to suppress, but that motion never demanded the relief of suppression. It was really a motion for a suppression hearing that attached to the police report, and this has become common practice in the District of New Jersey, especially in cases against the federal public defender. They attach the police report and say this report raises more questions than it answers, so we need a hearing to sort it out. They don't allege a Fourth Amendment violation. They don't allege facts material to the resolution of their claim. And they just said, you know, if we could just get some officers on the stand, we might convince you. But there was an affidavit submitted that seemed to dispute some of the factual assertions made by the police. They did submit an affidavit in their reply. Whether the factual disputes they raised were material, we vigorously dispute. But certainly under Voight, their moving burden should have been to file a motion to suppress that said there's been a Fourth Amendment violation because there was no reasonable suspicion for the stop and frisk, no probable cause for the arrest. We want the handgun suppressed, and here's why. This was a warrantless search. That's correct. Doesn't that alone suggest that a hearing should be conducted under, I think it's U.S. v. Johnson? No, but that's not what Johnson suggested, but that was not the issue in Johnson. Johnson was a government appeal from an order suppressing evidence after a suppression hearing had been held. So it was not before this Court what the moving burdens are on a motion to suppress. And by the way, the Tenth Circuit case that this Court cited in Johnson as supporting the proposition Your Honor just articulated, if you go to the jump site, and that was the McNeely case, doesn't support that at all. McNeely just says when the issue is consent, the burden of persuasion is on the government to prove consent. The burdens of persuasion and burdens of going forward to show that a hearing is necessary are two very different things. And in at least seven non-presidential opinions now that I've counted, plus an additional one which didn't cite Voight, the Court has consistently articulated this standard, that you have to do more than just say there's been a warrantless search or arrest, therefore we get a hearing. You have to put forward an affidavit, a version of the facts, that show that there are material issues of fact and dispute. Well, isn't that exactly what happened, though? I mean, you have a warrantless search, you have a colorable claim, don't you? They never raised it. Well, but you have an affidavit that was submitted that said I attempted to place – at no time did I attempt to place the gun in my pocket. At no time did I hold or otherwise have a gun in plain sight. While on Orange Avenue. I was not approached by the officers, et cetera, et cetera. Right. I don't have to read the whole affidavit, but an affidavit was submitted that disputed the version by the police officer. Well, I don't know if it did materially. The affidavit was untimely, and the district court noted that. It's hard to know whether the district court resolved it on that basis, but it's unfair to fault them. By the way, when they go to the – But isn't it material to say at no time did I have a gun in plain sight, which was essentially what the police officer said? I saw the gun, and so I approached them. And he says, no, it didn't happen that way. Well, while on Orange Avenue in Newark, the police report doesn't say where he saw the defendant, and this was on the corner of Nesbitt and Orange Street in Newark, and so it could have been very carefully crafted. The defendant may have been standing on Nesbitt Street as opposed to Orange Street, and so his affidavit is literally true, but not sufficient to create a material issue of fact. I see my time is up. Well, go ahead. How about his assertion that he was non-arrested by police officers inside a liquor store where the police officer said that's exactly where the arrest occurred?  If it didn't happen – Okay, that's not material, but you don't think it's material that the defendant says, no time did I have a gun in plain sight? It would be material if the police report that the defendant attached to his motion said that while the defendant was standing on Orange Avenue, he displayed what appeared to be a weapon. That's not in the police report. They're manufacturing a dispute by assuming that's what the report alleges. But the report just says, while patrolling in the area of Nesbitt and Orange Street. And isn't it the case that the district court judge specifically said, well, he noted that they came up with this affidavit not until the reply was submitted. I mean, maybe I'm reading too much into it, but I thought I detected in the commentary by the federal public defender that this was the practice to submit the affidavit with the reply. And if I did read the record right on that, what was the district judge's response? Well, that was their reply. And that was their statement, that that is their practice. And it's interesting that at the hearing they focus only on the original basis, mostly on the original basis for the motion, that there are problems with the police report. They stay away from it. But did the government say, wait a second, you know, we're just looking at this for the first time in the reply. Did you object? Did you say something to the judge that maybe you shouldn't take this into account? We didn't object that it was untimely, but we're the appellee here, and we're arguing that the district court did not abuse. But in the district court, did you make any kind of objection to the use of this affidavit? No, we did not. You were content that it was filed okay and the judge can consider it? Yes. Well, I don't know if we're content, but we were confident, we remain confident that it failed to raise a disputed issue of fact under void, which is a controlling standard. Thank you. We ask you to affirm the judgment. Thank you, Mr. I have a different approach to this. To be relevant, these conflicts of testimony must be relevant to a constitutional claim. Here there was no constitutional claim by Hines in requesting this hearing. So none of this is material. That's correct, Your Honor. It was a, well, give us the hearing so we can show some facts, and then we'll make our claim and seek suppression later. That's not how suppression practice is under void. But his claim was premised on a Fourth Amendment, wasn't it? Search and seizure? What? Illegal search and seizure? No. There would be no other reason for it, but he didn't clearly say there was no reasonable suspicion. And, by the way, we know with this Court's recent decision in Gatlin, I believe it is, that just seeing the weapon is sufficient in and of itself to justify reasonable suspicion. Thank you very much. Thank you, Mr. Sanders. Ms. Arko? I think I understand your position in Mr. Sanders' response, but how about the standard that we have to apply in this case to the judge's decision, which seems to be a pretty high deferential standard? In terms of? Judge Kavanaugh's decision not to give you a hearing is considered for abusive discretion. I think the problem is that there has been no determination of the constitutionality of the search here. This Court can't really affirm any factual findings because there were no factual findings. There was a clear dispute about the only constitutionally relevant assertion in that police report. Without that assertion, they had no cause to arrest. Is there a harmless error type of analysis that we can consider based on? I don't think in this case, because the harm was Mr. Hines did not, there has been no ruling as to the constitutionality of his warrantless arrest. I think that is a, a, a. But you know what I'm referring to, which is the testimony presented in the trial. I think even there, the harm, you can't do a harmless error analysis because the jury didn't have to make those determinations. This Court would be making a credibility determination about the version Officer Romero gave essentially versus Mr. Hines' affidavit. Why would we be doing that? I mean, the district court is the one, let me read to you from page 72 of the appendix. There's a lengthy discussion by Ms. Mack about the vagueness of the police reports and in essence making the argument that Mr. Sanders was saying was made, which is these things are raising more questions than they're answering. And then at the very end of that, there's this sentence. There are additional contested issues of fact as evidenced by the affidavit submitted by Mr. Hines. It's like a throwaway at the end to which the court responds, which wasn't submitted until after, until the reply, correct? That wasn't originally submitted, was it? In light of that comment by the district court, is it an unfair reading of the ruling made by the court that the court was saying, look, you acknowledged you were accepting the police version in your footnote 2 of your submission and you didn't come up with anything until you submitted this affidavit at your reply, I'm going with what the police said. And in fact, he goes through and says, it's perfectly clear to me what the police said. Doesn't that indicate that the district judge was unwilling to entertain your late affidavit? No. I think the judge noted that I think it was almost, how I read that, it was a matter of course, that's what you submitted with your reply. The court's ruling was not based on the untimeliness of the affidavit. Nor, and I think when the court said, I think the report is clear, I think notably it didn't say, I think Officer Romero's account is credible. I don't see how it could, given all it had was a police report versus an affidavit. I think Mr. Hines, and I conceded, perhaps in my nervousness at first, I conceded a little too quickly that we did not ask for a motion to suppress. It was titled a motion to suppress. We submitted a proposed order asking to suppress the evidence. Well, what you call something on the label really doesn't matter, does it? I mean, the text. I'm sorry. Counsel also went into court saying we are challenging the constitutionality of the search. There was simply no dispute. I just wanted to backtrack from my backtracking before. There was no question about that. The constitutional claim you agree is a Fourth Amendment? Yes. Yes. How about the last statement in the last statement in your motion over your signature? That you were not made, you wanted this hearing, and after the hearing you will determine whether you would bring a motion to suppress. I think that is just an acknowledgment to reality that we did not expect the court to suppress without a hearing. How does that statement match up with your recent statement that the title of this was a motion to suppress? It was a motion for a hearing to suppress. I think there is a problem with placing so many procedural hurdles on a defendant when basically it is the government's burden to come forth. It's not a procedural hurdle, is it?  If you want to move for a hearing and not to suppress, it's your choice. The government doesn't say you've got to move for a hearing first. There was apparently a deliberate decision by the Federal Public Defender's Office to file a motion to ask for a hearing. It was titled a motion to suppress, and we submitted a proposed order to suppress. The government understood it, that we were moving to suppress, but we recognized that we would need a hearing in order to do that.  I think that is a better way to phrase it. But was it captioned a motion for a hearing? No, it was a motion to suppress. I'm not sure. You know what? I guess we'll have to spend some time with the document, but I've spent some time with the document, and the substance of it appears to say give us a hearing, and then we'll move to suppress. I'm not sure how to get with that. Let me read that. I'm reading from page 24 of the appendix, and I read it before. Without that clarification, the vague and questionable documentation of what happened, which you agreed to earlier, precludes any effective evaluation or intelligent determination. Now again, and this is the third time I'm reading this, at that point Mr. Hines will request that the weapon allegedly seized be suppressed and the indictment then be dismissed. That is over. There is no question, however, what was going on in court that day. We were seeking a hearing. That was signed by Lisa Mack. And we had submitted, by the time we appeared in court, we had submitted an affidavit that directly disputed the constitutional basis for that arrest. Mr. Hines has received no determination that his arrest was constitutional. That is a glaring deficiency in the proceedings because the jury too has not determined, obviously. It's not their job to determine the constitutionality of the arrest. If I could address one question you had asked Judge Fuentes, but he has five convictions for the loitering. I think the appropriate, especially in light of the new test, I think the test Well, not just loitering. Loitering with the purpose to purchase drugs. Right, I'm sorry. Drug loitering, I thought I said. I'm sorry. The appropriate place to decide how to take into account those convictions, I would argue in the wake of Booker, is 3553A. In the absence of a categorical determination by the Sentencing Commission that those offenses, those sentences are predictive of recidivism and therefore should be counted. I think the more appropriate thing is to say for a district court to look at, let's say somebody has 24 convictions for drug loitering. Say, okay, they're not counted in the mechanical criminal history score, but I'm going to take them into account. I think that makes sense with the test that applies not just to, well, we say it doesn't apply to loitering, but it wasn't geared just for loitering. It was geared to the numerous offenses that have to be compared. Is that argument in your brief? Is that argument in your brief? We argue that the test makes no sense in light of. You can just answer yes or no. Was that argument presented in your brief? I think in various parts, yes. I think the component parts of that, I hope I've refined it a little, but I think the component parts of that were argued, yes. Oh, I'm sorry. Not in our initial brief. I apologize. In our reply brief, Mr. Sanders, yes, I totally apologize. We did not address the test in the first brief. Mr. Sanders opened the door for you. He certainly did. Excellent lawyer and a nice guy. Unless the Court has further questions. Very good. Thank you, Ms. Hargill. Thank you very much. And, Mr. Sanders, thank you as well. The argument was very well presented, and we thank you. We will reserve judgment. Thank you.